DAVID DRAKE, USB # 0911
DAVID DRAKE, P.C.
6905 South 1300 East, # 248
Midvale, UT 84047
Telephone: (801) 205-9049
Facsimile: (801) 601-1502
E-mail: sirdrake2033@gmail.com

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF UTAH

| | |
|---|---|
| **RICHARD MESSINEO,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**DEBBIE KEMP, in her individual capacity; ROLLIN COOK, in his individual capacity; THOMAS PATTERSON, in his individual capacity; BRENT WIECHMAN, in his individual capacity; LONDON STROMBERG, in his individual capacity; JIM HUDSPETH, in his individual capacity; and DOES 1 through 10, in their official and individual capacities.**<br><br>**Defendants.** | **AMENDED COMPLAINT AND JURY DEMAND**<br><br>Case No. 2:17-cv-01225-EJF<br><br>Magistrate Evelyn J. Furse |

COMES NOW plaintiff, who makes a jury demand, and for cause of action against defendants, complains and alleges as follows:

## PRELIMINARY STATEMENT

1.     This action arises under federal law, including the Civil Rights Act, 42 U.S.C. § 1983.

2.     This complaint is being amended as a matter of right since no defendant has filed an answer or response to the complaint.

## PARTIES

3.     Plaintiff Richard Messineo (Messineo), is a citizen of the United States and is currently a resident of Florida. During the relevant time periods of this complaint, Messineo was an inmate in the Utah State Prison, Draper facility, and in the Utah State Prison, Gunnison facility.

4.     Defendant Debbie Kemp ("Kemp") is a citizen and resident of the State of Utah and is being sued in her individual capacity.  At all times mentioned herein, based upon information and belief, she was first employed by the United States Drug Enforcement Administration and during plaintiff's incarceration was employed by the Utah Board of Pardons and Parole and/or the Utah Department of Corrections.

5.     Defendant Rollin Cook ("Cook") has been the Executive Director of the Utah Department of Corrections since circa 2013.  He is a citizen of the State of Utah, Salt Lake County, and is being sued in his individual capacity.

6.     Defendant London Stromberg ("Stromberg") was the Executive Director of the Utah Department of Corrections between Thomas Patterson and Cook being the Executive Directors.  He is a citizen of the State of Utah, Salt Lake County, and is being sued in his individual capacity.

7.    Defendant Thomas Patterson ("Patterson") is the former Executive Director of the Utah Department of Corrections ("DOC") from 2006 to 2013.  He was Kemp's ultimate supervisor from 2010 through 2013.  He is a citizen of the State of Utah, Salt Lake County, and is being sued in his individual capacity.

8.    Defendant Brent Wiechman ("Wiechman") is the former Bureau Chief of the DOC until 2013.  In that capacity, he was Kemp's immediate supervisor.  He is a citizen of the State of Utah, Salt Lake County, and is being sued in his individual capacity.

9.    Defendant Jim Hudspeth replaced Wiechman as the Bureau Chief of the DOC.  From 2013 until present, he was Kemp's immediate supervisor.  He is a citizen of the State of Utah, Salt Lake County, and is being sued in his individual capacity.

10.    Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these defendants by such fictitious names.  These DOES are co-conspirators with the named defendants in violating the civil rights of Messineo.  Plaintiffs will amend this complaint to allege their true names and capacities when ascertained through discovery.  Based upon information and belief, each of these DOES 1 through 10 were either controlled by defendants or are acting under their direction.  They include individuals acting as agents for these defendants acting under the direction and control of these defendants.

## JURISDICTION AND VENUE

11.    Each of the Defendants reside and/or has transacted business within this judicial

district during the relevant time periods.

12.     The claims for relief alleged herein arose within this judicial district.

13.     Plaintiff invokes this Court's jurisdiction over each of his causes of action for violation of his civil rights under 42 U.S.C. § 1983 and costs under 42 U.S.C. § 1988, and pursuant to 28 U.S.C. §§ 1343 and 1331.

14.     Venue is proper in this judicial district under 28 U.S.C. § 1391 due to the fact that Defendants either transact business and/or reside in this judicial district.

## FACTUAL BACKGROUND

15.     This case arises out of a series of unlawful actions taken by defendants, in their individual capacities, to deprive Messineo of his constitutional rights, including, without limitation those of due process, loss of liberty, and other rights guaranteed by the Fourth, Fifth, and fourteenth amendments to the United States Constitution.

16.     On November 29, 2010, Messineo, by entering into a plea agreement, pled guilty to six charges in the Third District Court, Salt Lake Department, State of Utah: (b - A misd), (c - 2nd degree felony), (f - 3rd degree felony), (g - 3rd degree felony), (h - 2nd degree felony) and (i - 3rd degree felony). Remaining charges were dismissed. Messineo was sentenced for the class A misdemeanor to an indeterminate term of not to exceed one year in the Utah State Prison; for the 2nd degree felonies (drug charges) to an indeterminate term of not less than one year nor more than fifteen years in the Utah State Prison; for the 3rd degree felony of purchasing, transporting, possessing, use of a

firearm by restricted person to an indeterminate term of not to exceed five years in the Utah State Prison; and for the two remaining 3rd degree felony charges (drugs), to an indeterminate term of not to exceed five years in the Utah State Prison.  All sentences were to run concurrently.  Absolutely no sex-related charges were filed against him and were not an issue in either the information and sentencing.

17. The sentencing matrix called for jail time and probation, no prison time.

18. At Messineo's sentencing, Kemp appeared and filed a document with the sentencing judge which contained lies, salacious statements, and unsupported and specious allegations against Messineo, all for the purpose of subverting justice, denying Messineo his rights of due process, and with the intent of sending him to prison even though Messineo's matrix called for no prison time.  By spreading these lies and subverting the truth, Kemp intentionally cloaked the truth from the Court, causing Messineo to receive a prison sentence.  These unlawful and unconstitutional actions of Kemp continued unabated from 2010 through 2015.

19. At the time she filed this salacious, fabricated, and deceitful document with the sentencing judge, Kemp knew it contained lies and fabricated testimony, and intended to do so in order to ensure that defendant got the maximum time in prison.

20. On June 30, 2011, Messineo appeared before the Board for an original parole grant hearing after serving approximately six (6) months in prison.  However, on or about June 27, 2011, unbeknownst to Messineo, Kemp, who was then acting as an investigator with the Utah Department

of Corrections, and supervised by Thomas Patterson, Executive Director of the Department of Corrections, and Bureau Chief Brent Wiechman, filed a salacious and false Memo with the Board and untimely provided Messineo with a copy, which contained allegations that were 1) not part of the official Presentence Report provided Judge Barrett, the Third District Court Judge who sentenced Messineo - added only as an adjunct to the Report; 2) unproven, speculative, and not part of any official record; 3) contained lies, half-truths and conversations taken out of context (the prison phone conversations between Messineo and family members which were referred to by Kemp were taken out of context even though she failed and refused to inform the Board of Pardons and Parole of this thereby providing a false narrative to the Board of Pardons and Parole ("Board") intending the Board to rely thereon, which it did; and 4) not elements of the crimes charged against Messineo or crimes to which he plead guilty.

21. Consequently, based upon the mendacious and trumped-up charges in Kemp's submission to the Board, Messineo was denied due process and had absolutely no opportunity to rebut these allegations at his first Board parole hearing. (While in prison, Messineo had a great record, attended classes, had no disciplinary problems, and was a model inmate.) This Kemp's unproven, unfounded, and specious memo poisoned the well against Messineo and kept him in prison for four years when his matrix only called for 18 months.

22. Kemp even went so far as to make the allegation to the Board that Messineo had put a contract out on her. This was absolutely false and uncorroborated. However, it did exactly what

Kemp wanted it to do – the Board believed her and refused to provide Messineo with a parole date.

23.     Kemp also contacted the mother of Messineo's cell mate, living in Price at the time, and told her that Messineo had put a contract out on her to kill her.  Again, this was nothing more than an absolute falsehood and was uncorroborated.

24.     Kemp kept refiling the aforesaid false and mendacious documents at each Board hearing plaintiff attended from 2011 through 2015.  Specifically, at a Board hearing on November 26, 2013, Kemp again provided information to the Board which contained out and out lies, half-truths, unsupported claims of sexual abuse (even though Messineo was never convicted of any sex-related crimes), and reiterated her unsupported claims that Messineo had put a hit out on Kemp while in prison and her unsupported claims that Messineo had put a hit out on his cell mates' mother, unsupported claims that Messineo was a sexual predator and a danger to the public, and other lies and half-truths for the sole purpose of ensuring that Messineo would spend 15 years in prison even though his matrix called for only 16 months probation.

25.     On or about October 15, 2012, a second Board hearing occurred.  The Order from this hearing was that Messineo was to have a psychological evaluation.  This order was a direct result of Kemp's lies and deception contained in the documents she filed with the Board.  This order was made even in light of Messineo's Presentence Report - Under Victim Impact Statement and Restitution, it stated: "There are no clearly identified victims or restitution issues that can be addressed."  As a result of Kemp's efforts, Messineo was effectively denied the right to see the

"evidence" against him at this hearing and was further denied the right to rebut this so-called evidence.

26. On November 26, 2014, another Board hearing occurred. Again, Kemp provided the same (as contained in the preceding paragraphs) and more so-called false evidence was presented without being timely presented to Messineo. Kemp was able to manipulate the system so that Messineo was not timely provided Kemp's documents making it impossible for him to prepare for the Board hearing. Consequently, the hearing officer denied Messineo the right to speak in his behalf. The whole of the hearing concentrated on Kemp's unsupported, salacious, and specious allegations concerning Messineo's alleged sexual misconduct even though he had not been charged or convicted of anything remotely related to sexual misconduct.

27. As a result of Kemp's lies, deceit, and intentionally withholding evidence based upon truth, it was made very apparent to Messineo at this hearing that if he denied any sexual misconduct allegations of Kemp, he would be branded as not accepting responsibility for this alleged sexual misconduct thereby leading to more repercussions. The Board's decision (memorialized in writing on January 6, 2014) was that Messineo was to enroll in a SEX OFFENDER TREATMENT PROGRAM. Further, based upon the evil intentions of Kemp, Messineo would be ineligible for another parole hearing until he completed this program. For some unknown reason, in spite of this order, Messineo's move to the Utah State Prison was inordinately delayed for several months, causing his prison time to be extended, since being moved to the Draper Prison was a condition

precedent to his being able to enroll in this program. Kemp not only had the opportunity to cause this delay, she had the motive to do so.

28.     Messineo was then given another parole hearing date during November, 2015. In spite of Messineo's good conduct during his tenure in prison and the sentencing matrix, Messineo's prison time was extended by Debbie Kemp's unfounded and unsubstantiated sex abuse allegations, contained in her documents filed with the Board and influencing the Board, that were never part of his original charges. And, Kemp made certain that Messineo was never timely provided these unfounded and unsubstantiated allegations which prevented him from being able to adequately prepare for his Board hearings and denied him the right and/or opportunity to rebut these allegations.

29.     Kemp had the opportunity and motive to influence the parole decisions of the Board by use of her intentionally false allegations and omissions of material evidence in the documents she presented over the years to the Board. In fact, the Board was influenced by Kemp's mendacious and malicious conduct demonstrated by the fact that the Board's decisions were exactly those advocated by Kemp.

30.     Moreover, Kemp made certain that no evidentiary hearing was held on her absolutely false sexually-related allegations. These specious allegations were taken out of context and were not true.[1] Yet, they were uncritically accepted by the Board with devastating consequences to Messineo.

---

[1] Kemp, contacted Messineo's wife in Florida during Messineo's prison stay and threatened her with criminal action in Messineo's and his wife's bankruptcy. Her threats were unfounded and not supported by the law. She also so interfered in the lives of Messineo and his wife that Messineo's wife filed for and obtained a divorce from Messineo in Florida. Ms. Kemp

It should be strongly noted that at the time of sentencing, Messineo was not required to register as a sex offender since his convictions were not sex-related. He is now being branded by the Board as a sex offender without any cause to do so has and will continue to have far-reaching devastating consequences for Messineo.[2]

31. Based upon the actions and influences of Kemp, Messineo was never allowed to defend himself against Kemp's fabrication of sexual misconduct (never part of a court hearing, nor an element of the crimes charged and on which Messineo was sentenced, nor upon which any evidentiary hearing was held). As previously stated, neither was Messineo provided, either in a timely manner or at all, any Kemp memoranda or other so-called evidence that the Board considered or upon which it relied. In fact, during the last Board hearing, the hearing officer, due to Kemp's malicious influence, specifically withheld from Messineo documents upon which she based her

---

has frequently and continuously violated the civil rights of Messineo and has, to this point, done so with impunity. She has also defamed Messineo to individuals outside prison employment, e.g. the mother of a cell-mate of Messineo.

[2] The Presentence Report considered by Judge Barrett in sentencing Messineo ended with a four-page document, not authored by the Presentence Writers, the first page entitled "Synopsis", exclusively authored by Debbie Kemp. This was at sentencing and Kemp's 4-page document was not evidence and none of the allegations contained therein were ever proven. All this 4-page document contained were the lies, misstatements and misrepresentations of Kemp who attempted to influence Judge Barrett to somehow have Messineo sentenced as a Sex Offender requiring life-time registration. Judge Barrett did not accept these unfounded and unproven allegations. Judge Barrett did not sentence Messineo as a sex offender and did not sentence him to report as a sex offender. Kemp' 4-page document, intentionally filled with lies and salacious allegations, in addition to her other documents, were repeatedly filed by her with the Board to be considered by it at every parole hearing of Messineo.

decision to force him to enroll in a Sex Offender Treatment Program, citing as a reason therefor that it was for the protection of a victim or victims.  There were no victims of Messineo's crimes as is underscored by the Presentence Report Statement that "There are no clearly identified victims or restitution issues that can be addressed." This was all fabricated by the Kemp who wrongfully influenced the Board in order to deny Messineo's civil rights.

32.     Messineo's Fifth and Fourteenth Amendment rights to due process of law were violated by the Kemp and the rest of the defendants.

**FIRST CLAIM FOR RELIEF**
**Civil Rights Violations under 42 U.S.C. § 1983 - Fourth, Fifth, and Fourteenth Amendments**
**(Against All Defendants)**

33.     Plaintiff incorporates the preceding paragraphs of this Complaint by reference as if fully set forth herein.

34.     Defendants, alone and with each other as co-conspirators, under color of state law, have acted and established a custom, policy and/or practice to deprive Messineo of his right to be free from loss of his freedom in violation of the Fourth Amendment of the United States Constitution in the above-cited respects, also further enumerated below:

      (a)     by intentionally omitting material facts in the documents Kemp presented to the sentencing judge and to the Board on several occasions to keep Messineo in prison for a maximum sentence;

      (b)     by intentionally providing false, misleading facts and implications in the

    documents Kemp presented to the sentencing judge and to the Board on several occasions to keep Messineo in prison for a maximum sentence;

  (c) Kemp, by intentionally providing these false, salacious, and misleading documents, did so without any basis or reason therefor, for the sole reason to cause trouble for Messineo and to keep him incarcerated for a maximum prison sentence of at least 15 years; and

  (d)  and by such other conduct as will be shown at trial.

35. Defendants, as law enforcement agency and agents and in their personal capacities, under color of state law, have acted and established a custom, policy and/or practice to deprive Messineo of this rights under the United States Constitution as set forth in ¶¶ 16 through 27, above.

36. As a direct and proximate result of the actions of Kemp and the other defendants, Messineo has suffered losses in an amount to be proven at trial. These losses include his lost income for the years he was incarcerated, the loss of consortium of his now ex-wife, the breakup of his family, Kemp causing a divorce, and compensation for all of the emotional distress he has and is suffering as a result of the lies, deception, and all of the above-cited acts of defendants, all of which obstructed justice in order to meet their nefarious agendas and schemes.

37. Because the acts of defendants were carried out, at a minimum, with reckless disregard for Messineo's rights, defendants should be assessed punitive damages.

38. Pursuant to 42 U.S.C. § 1988, Messineo is entitled to his reasonable attorney fees,

costs, expert witness fees, and costs for prosecution of this action.

## SECOND CLAIM FOR RELIEF
### Civil Rights Violation under 42 U.S.C. § 1983 – Fifth and Fourteenth Amendments
### (Against All Defendants)

39. Plaintiff hereby incorporates the preceding paragraphs of this Complaint by reference as if fully set forth herein.

40. Defendants, alone and with each other as co-conspirators, under color of state law, have acted and established a custom, policy and/or practice to deprive Messineo of his rights to be protected against self-incrimination in violation of the Fifth and Fourteenth Amendments of the United States Constitution in the following respects:

    (a) Intentionally placing Messineo in a Catch-22 position with the Board of not being able to deny Kemp's false and salacious allegations of sexual misconduct, since to do so would have caused the Board to extend Messineo's prison time by denying him a timely parole date, branding him as failing to take and accept responsibility for his alleged sexual misconduct;

    (b) by implication due to his not denying Kemp's false and salacious allegations of sexual misconduct, Messineo impliedly admitted he was a sexual predator, in violation of his right against self-incrimination;

    (c) by permanently branding him as a sex offender, doing so without due process;

  (d) by extending the length of his prison time;

  (e) by forcing him to take a Sex Offender Treatment Program, which, if his prison record were obtained and reviewed by a prospective employer or licensing agency would stigmatize him as a sex offender;

  (f) by repeatedly making material misrepresentations about non-existent evidence linking Messineo to an alleged (and non-existent) crime;

  (g) and by such other conduct as will be shown at trial.

41. As a direct and proximate result of the actions of defendants, Messineo has suffered losses in an amount to be proven at trial.

42. Because the acts of defendants were carried out at a minimum, with reckless disregard for Messineo's rights, defendants should be assessed punitive damages.

43. Pursuant to 42 U.S.C. § 1988, Messineo is entitled to his reasonable attorney fees, costs, expert witness fees, and costs for prosecution of this action.

### THIRD CLAIM FOR RELIEF
**Civil Rights Violation under 42 U.S.C. § 1983 – Fourth, Fifth and Fourteenth Amendments**
**Failure to Train**
**(Against Defendants Cook, Patterson, Wiechman, Stromberg, and Hudspeth)**

44. Plaintiff hereby incorporates the preceding paragraphs of this Complaint by reference as if fully set forth herein.

45. Plaintiff is informed and believes and on this basis alleges that defendants Cook, Patterson, Wiechman, Stromberg, and Hudspeth, as supervisors of Kemp, failed to properly train

Kemp regarding Messineo's constitutional rights, including, without limitation, the right to be free from a substantial loss of freedom, the right to be protected from self-incrimination, rights of due process to counter Kemp's lies, malicious deceit, and other unconstitutional conduct, the right to be free from defamation and innuendo from an entity that could cause Messineo a protracted loss of liberty if he opposed the defamation and innuendo.

46. Plaintiff is informed and believes and on this basis alleges that the above-listed defendants in this cause of action failed to properly train Kemp regarding not lying and manufacturing false allegations and a false narrative and presenting documents containing these manufactured false allegations and false narratives to the Board in order to deny Messineo his constitutional liberty interests and other constitutionally protected rights.

47. These defendants' failure to properly train Kemp caused Kemp's deliberate or reckless indifference to Messineo's constitutional rights as evidenced by the egregious constitutional violations detailed above.

48. These defendants' failure to properly train Kemp stems from these defendants' custom and policy of failing to properly and adequately train with respect to constitutional rights, protecting constitutional rights, looking the other way, or allowing an agent, such as Kemp, to have free reign to further her own agenda or to destroy someone in the position of Messineo who, because of his incarceration, has no ability to defend himself.

49. Based upon plaintiff's information and belief, Messineo alleges that these defendants

had knowledge of prior civil rights violations and improper actions by defendant Kemp but these defendants failed to properly train their officers and agents with respect to the constitutional requirements in order to correct the prior constitutional behavior. They ratified her unconstitutional behavior.

50.     Defendants Cook, Patterson, Wiechman, Stromberg, and Hudspeth failed to instruct, train, and provide oversight to Kemp and, in the process, allowed her to act in the unlawful manner described above.

51.     These defendants' failure to properly train Kemp, caused Kemp, among other unlawful activities, to fabricate documents she submitted to the sentencing Judge and Board to cause Messineo to be incarcerated much longer than other similarly situated persons who had no prior criminal history and had a matrix recommending probation without imprisonment.

52.     These defendants' failure to properly train defendant Kemp caused deprivation of Messineo's constitutional rights as detailed hereinabove.

53.     As a direct and proximate result of the actions of these defendants, Messineo has suffered losses in an amount to be proven at trial.

54.     The acts of defendants were, at a minimum, reckless and, therefore, these defendants should be assessed punitive damages.

55.     Pursuant to 42 U.S.C. § 1988, Messineo is entitled to his reasonable attorney fees, costs, expert witness fees, and costs for prosecution of this action.

## FOURTH CLAIM FOR RELIEFF
### Civil Rights Violation under 42 U.S.C. § 1983 – Fourth, Fifth, and Fourteenth Amendments
### Failure to Properly Supervise
### (Against Defendants Cook, Patterson, Wiechman, Stromberg, and Hudspeth)

56. Plaintiff hereby incorporates the preceding paragraphs of this Amended Complaint by reference as if fully set forth herein.

57. The defendants listed in the Fourth Claim for Relief failed to properly supervise Kemp regarding her actions, as evidenced by the egregious constitutional violations detailed above, to intentionally violate the civil rights of Messineo in order to further her own agenda and for any other nefarious motive of Kemp.

58. These defendants knew or should have known of Kemp's propensities to fabricate, lie, and obstruct justice; yet, they did nothing to prevent her unlawful actions.

59. Plaintiff is informed and believes and on that basis alleges that these defendants had knowledge of prior incidents of constitutional and civil rights violations by Kemp.

60. These defendants failed to adequately investigate the unlawful conduct of Kemp, which was never corrected prior to the violation of Messineo' civil rights.

61. Defendants Cook, Patterson, Wiechman, Stromberg, and Hudspeth knew, or should have known, that their policy regarding supervision and investigation of agents of the DOC, especially Kemp, was so inadequate that it was obvious that a failure to properly supervise Kemp and other agents would result in further incidents.

62. Defendants' Cook, Patterson, Wiechman, Stromberg, and Hudspeth constitutionally deficient lack of supervision and lack of investigation were done with deliberate indifference to Messineo's civil rights.

63. As a direct and proximate result of the actions of these defendants, Messineo has suffered losses in an amount to be proven at trial.

64. The acts of Defendants were willful, malicious, and wanton; therefore, Defendants should be assessed punitive damages in addition to compensating Messineo for his actual monetary damages.

65. Pursuant to 42 U.S.C. § 1988, Messineo is entitled to his reasonable attorney fees and costs, in addition to expert fees and costs for prosecution of this action.

WHEREFORE, plaintiff prays for relief as follows:

A. Under the First and Second Claims for Relief, for Judgment in favor of Messineo and against all defendants, awarding compensatory damages, punitive damages, attorney fees and costs, all in amounts to be proven at trial;

B. Under the Third and Fourth Claims for Relief, for judgment in favor of Messineo and against Defendants Cook, Patterson, Wiechman, Stromberg, Hudspeth, and Does awarding compensatory damages, punitive damages, attorney fees, and costs, all in amounts to be proven at trial; and

C.      For such other and further relief as the Court deems just and proper.

DATED March 11, 2018.

                                        DAVID DRAKE, P.C.
                                        Attorney for Defendant


                                         /s/ David O. Drake
                                        David O. Drake